[Crim. No. 17984. In Bank. Oct. 30, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
HOWARD LEONARD LENT, Defendant and Appellant.

## COUNSEL

Alexander Anolik and Suzanne M. McDonnell for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Don Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

MOSK, J.—After conviction of grand theft (Pen. Code, § 484) defendant appeals, alleging the trial court erred in (1) preventing introduction into evidence of a prior misdemeanor conviction to impeach the credibility of a prosecution witness, and (2) imposing as a condition of probation restitution of funds involved in a related criminal charge of which defendant was acquitted. For reasons discussed *infra* we affirm the judgment.

Defendant, a nonlawyer investigator for a law firm, undertook to negotiate with an insurance carrier for settlement of a claim for personal injuries suffered by the daughter of Zippora Smith, after the law firm, originally engaged for that purpose, had withdrawn from the case. Ultimately defendant received on behalf of Mrs. Smith a draft in the amount of $1,278 and releases, all of which she signed. Presumably the $1,278 was to be allocated to payment of the medical bills of Mrs. Smith's daughter. The bills were not paid. Nevertheless defendant was acquitted of the charge of theft of those funds.

Mrs. Smith also received an additional $2,000 from the insurance carrier. Defendant accompanied her to the bank where the check was cashed. Out of the proceeds Mrs. Smith gave defendant $500 which she understood was for attorney's fees for defendant's employers. Defendant testified the sum was a personal gratuity; however, he shared it with the insurance adjuster. The jury convicted defendant of the theft of those funds.

I

■ When Mrs. Smith was on the stand as a prosecution witness, defendant's counsel sought to impeach her by inquiring into a five-year-old misdemeanor conviction. Upon objection being sustained, counsel made an offer of proof, conceding therein that his sole purpose was to reflect upon the credibility of the witness.

From the celebrated case of *Sharon* v. *Sharon* (1889) 79 Cal. 633, 673-674 [22 P. 26, 131], to date, it has been hornbook law that testimony relating to specific instances of misconduct is inadmissible to attack the credibility of a witness. This has always been interpreted to require exclusion of evidence concerning prior misdemeanor convictions. (*Stickel* v. *San Diego Elec. Ry. Co.* (1948) 32 Cal.2d 157, 165 [195 P.2d 416]; *People* v. *Matlock* (1970) 11 Cal.App.3d 453, 461 [89 Cal.Rptr. 862].) Indeed, the rule has been described as "elementary" (*People* v. *Sutton* (1964) 231 Cal.App.2d 511, 514 [41 Cal.Rptr. 912]). The only exception is specifically provided in Evidence Code section 788, which permits impeachment by a prior felony conviction. (*Grudt* v. *City of Los Angeles* (1970) 2 Cal.3d 575, 591 [86 Cal.Rptr. 465, 468 P.2d 825]; *People* v. *Meyer* (1963) 216 Cal.App.2d 618, 634-635 [31 Cal.Rptr. 285].)

Contrary to defendant's contention, we find no undue restriction on cross-examination in the legislative scheme, contained in section 788, of

limiting impeachment by previous crimes to felonies. The section is merely a "recodification of the existing law" (Cal. Evidence Code Manual (Cont.Ed.Bar 1966) p. 133). We decline the invitation to extend its application to misdemeanors. Indeed, the current trend is toward refinement and limitation of the use even of prior felonies for impeachment. (See, e.g., *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].)

Nor do we find authority to support defendant in *Davis* v. *Alaska* (1974) 415 U.S. 308 [39 L.Ed.2d 347, 94 S.Ct. 1105]. The circumstances in *Davis* bear little similarity to the case before us. There a juvenile witness on probation, said the high court, might have falsified his story under undue police pressure not only "to shift suspicion away from himself as one who robbed" the premises in question, but also "under fear of possible probation revocation." The court explained that Davis' counsel did not seek to impeach the credibility of the juvenile, but to show his potential bias or prejudice based on concern of jeopardy to his probation. (*Id.* at p. 311 [39 L.Ed.2d at p. 351].)

In the instant case counsel in his offer of proof did not contend the witness was biased or prejudiced, but only that since money was involved her credibility was in question. The implication, though unstated, was that the witness might falsify her testimony because she harbored a hope that if the defendant were convicted, and if the judge gave him probation, and if restitution were a condition of probation, she might be the recipient of that restitution. Obviously such an argument could be made about every victim of theft. But even that possibility, into which the prosecutor agreed counsel could probe, bears no similarity to the bias potentially involved in *Davis,* nor does it render admissible a five-year-old extraneous misdemeanor conviction.

The trial judge, properly exercising the discretion given under Evidence Code section 352, held "the introduction of this issue in the case would simply lead us far afield from the basic issues which we are confronted with at this time." No abuse of discretion can be found in that ruling.

## II

In placing defendant on probation, the trial court imposed as a condition thereof restitution in the amount of $1,778. This figure represented the $500 in the count of which defendant was convicted, and the $1,278 in the count of which he was acquitted.

■ The Legislature has placed in trial judges a broad discretion in the sentencing process, including the determination as to whether probation is appropriate and, if so, the conditions thereof. (Pen. Code, § 1203 et seq.) A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." (*People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290].)[1] ■ Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality.

As to the first *Dominguez* criterion, there is no question as to the relationship of the total sum of restitution ordered to the crime of which defendant was convicted. The victim failed to receive $1,778 to which she was entitled and the court was convinced of the defendant's responsibility therefor. The crime was the theft of some of those funds.

On the third criterion: an order for restitution, i.e., attempting to make a victim whole, has generally been deemed a deterrent to future criminality (*People* v. *Miller* (1967) 256 Cal.App.2d 348, 353 [64 Cal.Rptr. 20]), and the court is not limited to the transactions or amounts of which defendant is actually convicted (*People* v. *Miller, supra; People* v. *Flores* (1961) 197 Cal.App.2d 611, 616 [17 Cal.Rptr. 382]).

■ Thus we reach defendant's primary contention based upon the second criterion: that $1,278 of the restitution order relates to conduct which is not criminal in that he was acquitted of the theft of the funds involved. While conceding, as held in *People* v. *Williams* (1966) 247 Cal.App.2d 394, 408 [55 Cal.Rptr. 550], "that there should be no hard and fast rule that money payments as a condition of probation be limited to the direct consequences of the particular crime of which defendant stands convicted," defendant insists that consideration anew of charges of which he has been acquitted reduces the jury verdict "to a sham."

[1]In paraphrasing the foregoing quotation from *Dominguez* in *In re Bushman* (1970) 1 Cal.3d 767, 777 [83 Cal.Rptr. 375, 463 P.2d 727], we inadvertently stated the test in the disjunctive rather than the conjunctive, and repeated the error when we quoted *Bushman* in *People* v. *Mason* (1971) 5 Cal.3d 759, 764 [97 Cal.Rptr. 302, 488 P.2d 630]. (See *In re Mannino* (1971) 14 Cal.App.3d 953, 960, fn. 4 [92 Cal.Rptr. 880, 45 A.L.R.3d 996].) To this extent, *Bushman* and *Mason* are disapproved.

The Attorney General, on the other hand, relies upon the differing burdens of proof. To convict the defendant the jury must have been convinced of his guilt of theft beyond a reasonable doubt. Acquittal of the criminal charge does not bar a civil action in tort on the same transaction (4 Witkin, Cal. Procedure (2d ed. 1971) p. 3324) and here there is asserted to be substantial evidence to support a civil judgment as to the $1,278.

The flaw in that rationale is that restitution cannot be based on mere civil claims; it must relate to past or future criminal conduct. Here we do not have criminal acts uncharged or untried, or victims uncomplaining or unknown (*People* v. *Miller, supra,* 256 Cal.App.2d at p. 353); in this instance criminal acts were charged, the cause fully tried, and the defendant exonerated by the jury of criminal responsibility for the $1,278. Ordinarily such result would preclude inclusion of that item in the restitution order.

However, additional circumstances were developed in the unusually prolonged probation hearing conducted by the meticulous trial judge. Unlike the typical abbreviated probation and sentence proceeding, this matter occupied nearly two court days; the People presented seven witnesses and the defendant two on that issue alone. The transcript of probation testimony consumes 139 pages.

At the conclusion of the probation hearing the trial judge declared that while he gave consideration to defendant's acquittal of the theft of the $1,278, under the state of the record he did not deem the verdict to have absolved defendant of the "false statements about where those proceeds went and for what purpose." The judge was convinced "that Mr. Lent in his testimony before the jury perjured himself as respects the disposition of the proceeds of this $1,278 check." And, finally, the court found that the total "culpability of Mr. Lent is not displayed in the setting of this case but is reflected further in the evidence [produced] at the formal probation hearing."

Under these circumstances we can find no abuse of discretion in the probation order.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., and Richardson, J., concurred.

**CLARK, J.**—I concur in the judgment, but would qualify the statement that acquittal of the theft of the $1,278 "[o]rdinarily . . . would preclude inclusion of that item in the restitution order." (*Ante,* p. 487.) I assume arguendo that the acquittal here would have precluded ordering restitution of the sum involved in that count, but for the fact that "additional circumstances were developed in the unusually prolonged probation hearing." *(Id.)* However, when the preponderance of the evidence produced at the trial itself supports such an order, additional evidence need not be presented at the probation hearing.

Appellant's petition for a rehearing was denied December 17, 1975. Wright, C. J., and Sullivan, J., were of the opinion that the petition should be granted.